IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OXBO INTERNATIONAL CORPORATION,

                Plaintiff,

   v.

H&S MANUFACTURING COMPANY, INC.,

                Defendant.
                                              OPINION & ORDER

H&S MANUFACTURING COMPANY, INC.,
                                              15-cv-292-jdp

                Counterclaim Plaintiff,

   v.

OXBO INTERNATIONAL CORPORATION and
KUHN NORTH AMERICA, INC.,

                Counterclaim Defendants.

---

Plaintiff Oxbo International Corporation initiated this patent suit against defendant H&S Manufacturing Company, Inc., alleging infringement of four of its patents.[1] H&S counterclaimed, alleging non-infringement and invalidity.

On January 29, 2016, the court granted H&S leave to amend its answer and counterclaim, Dkt. 21, and several weeks later, the court granted a second motion to amend, Dkt. 27. H&S's amended counterclaim added state law claims for tortious interference with prospective contract and common law unfair competition against Oxbo and a newly joined third party, Kuhn North America, Inc.

---

[1] U.S. Patent No. 7,310,929 (the '929 patent), titled Windrow Merging Apparatus; U.S. Patent No. 8,166,739 (the '739 patent), titled Windrow Merging Apparatus; U.S. Patent No. 8,511,052 (the '052 patent), titled Windrow Merger; and U.S. Patent No. 8,863,488 (the '488 patent), titled Windrow Merging Apparatus.

Now Oxbo and Kuhn have moved to dismiss H&S's tort counterclaims (amended counterclaims IX and X), pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 34. Kuhn has separately moved for Rule 11 sanctions against H&S, for making false, unfounded allegations in its amended counterclaim. Dkt. 67. The court will grant the motion to dismiss and deny the motion for sanctions.

ALLEGATIONS OF FACT

The court draws the following facts from the parties' pleadings, Dkt. 1 and Dkt. 28, construing the allegations "in the light most favorable to [H&S], accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [its] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Oxbo designs, manufactures, and distributes agricultural equipment, including windrow mergers, which merge cut crops into rows for harvesting and baling. H&S manufactures, sells, and imports windrow mergers and other agricultural equipment, including its "Tri-Flex" triple head merger. Oxbo contends that two Tri-Flex merger models (TFM2130/3 and TFM2125/3) infringe its '929 patent, '739 patent, '052 patent, and '488 patent.

Kuhn owns a fifth patent that is only indirectly at issue in this case, U.S. Patent No. 8,402,730, titled Multi-Axis Floating Merger Suspension. Pursuant to a 2014 cross licensing contract, Kuhn is an exclusive licensee to the Oxbo patents, and Oxbo is an exclusive licensee to the Kuhn patent. Under the cross license, Oxbo and Kuhn have agreed to notify one another whenever a third party infringes their respective patents, and they have agreed to discuss how to proceed and whether to pursue the third party jointly.

In late 2014, H&S had its agent, BDO Capital Advisors, LLC (not a party to this case), look into whether anyone would be interested in purchasing H&S. Oxbo was among the companies that received information about the proposed sale; Bob Snape, president of BDO Capital Advisors, passed information along to Oxbo executive Gary Stich. Oxbo received a one-page document titled "Project Hay" and a mutual nondisclosure agreement. Although the documents did not explicitly indicate that the information was about H&S, the documents included a list of products that H&S manufactures, a description of the business, and operating statistics. H&S alleges that, "[o]n information and belief, given the extent of the disclosure in the H&S Sale Sheet, Oxbo was aware that the company for sale was H&S." Dkt. 28, at 9. In spring 2015, Stich informed H&S's president, Chris Heikenen, that he knew that H&S had been for sale for several months.

In May 2015, Oxbo filed this suit against H&S, alleging infringement of the '929 patent, '739 patent, '052 patent, and '488 patent. Around that same time, Kuhn sent H&S letters accusing it of infringing the '730 patent; Kuhn did not file suit.[2] H&S alleges that Oxbo and Kuhn agreed to jointly enforce their patents against H&S, despite the fact that they knew that H&S was engaged in negotiations to sell its business. H&S counterclaimed, alleging non-infringement, invalidity, and state law claims for tortious interference with prospective contract (i.e., the proposed sale of its business) and unfair competition.

---

[2] Instead, on September 11, 2015, H&S filed a separate suit against Kuhn, seeking declaratory judgment of non-infringement of Kuhn's '730 patent. *H&S Mfg. Co., Inc. v. Kuhn North America, Inc.*, No. 15-cv-574 (W.D. Wis. filed Sept. 11, 2015). Kuhn filed a compulsory counterclaim for infringement.

ANALYSIS

A.  Motion to dismiss

In count IX of H&S's amended counterclaim, H&S alleges that Oxbo and Kuhn purposefully interfered with its prospective contractual relationship with a third-party purchaser, by asserting infringement claims in bad faith. In count X, H&S alleges that the interference constitutes unfair competition under Wisconsin law. Oxbo and Kuhn have moved to dismiss amended counterclaims IX and X because: (1) they are entitled to *Noerr-Pennington* immunity; or, in the alternative, (2) H&S has failed to state a claim upon which relief can be granted.

1.  The *Noerr-Pennington* doctrine

"Under the *Noerr-Pennington* doctrine, a party that exercises its First Amendment right to petition the government for redress generally is immune from antitrust liability premised on the petition." *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1075 (W.D. Wis. 2012) (citing *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965)).[3] However, the doctrine does not shield "petitioning conduct" from liability if the litigation is a "sham." *Id.*; *see also Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993).

Oxbo and Kuhn contend that H&S has not adequately alleged that they engaged in "sham" litigation, and, as result, H&S cannot bring state law tort counterclaims against them for bringing legitimate patent claims against H&S. Oxbo and Kuhn spend a great deal of time

---

[3] The parties do not discuss the fact that the *Noerr-Pennington* doctrine traditionally shields petitioners from antitrust liability rather than liability for tortious interference, or tort claims generally. But for purposes of evaluating the motion to dismiss, the court will assume that it applies in this context.

arguing that H&S's non-infringement and invalidity allegations do not demonstrate that Oxbo's claims and Kuhn's compulsory counterclaim in the related suit qualify as "sham"—i.e., objectively and subjectively baseless—litigation. H&S, in turn, spends a great deal of time highlighting its allegations that indicate that Oxbo and Kuhn know that the patents-in-suit are invalid, that H&S does not infringe any of the patents, and that, as a result, their claims are baseless. In short, the parties spend a great deal of time debating facts and arguing the merits of their respective positions. But at the Rule 12(b)(6) juncture, this posturing is premature. The court will not weigh facts or test the merits of the case on a motion to dismiss.

At this stage, it appears that H&S has sufficiently alleged that Oxbo and Kuhn's claims qualify as "sham" litigation. H&S alleges that

> Oxbo knew or should have known when it filed suit against H&S that one or more of its assertions of patent infringement were baseless at least because of an on-sale bar, invalidating prior art, because it had previously told H&S it did not infringe, and because the operation of the accused products does not read on any valid claim in the Oxbo Patents.

Dkt. 28, at 16. And H&S alleges that "Kuhn knew or should have known when it accused H&S of infringing the Kuhn Patent that its claim was baseless because the operation of the accused products does not read on any valid claim in the Kuhn Patent." *Id*. But the court does not need to definitively decide this issue because H&S has failed to plead a state law tort counterclaim upon which relief can be granted.

### 2. Failure to state a claim upon which relief can be granted

A motion to dismiss pursuant to Rule 12(b)(6) tests the complaint's (or, in this case, a counterclaim's) legal sufficiency. To state a claim upon which relief can be granted, a pleading must provide a "short and plain statement of the claim showing that the pleader is

5

entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

To state a claim for tortious interference with prospective contract, H&S must allege that: "(1) an actual or prospective contract existed between the plaintiff and a third party; (2) the defendant interfered with that contract or prospective contract; (3) the interference was intentional; (4) the interference caused the plaintiff to sustain damages; and (5) the defendant was not justified or privileged to interfere." *Share Corp. v. Momar Inc.*, No. 10-cv-109, 2011 WL 2600740, at *2 (E.D. Wis. June 29, 2011) (citing *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999)). Interference must be intentional and improper: they "must act with a purpose to interfere with the prospective contract. If an actor lacks the purpose to interfere then his or her conduct does not subject him or her to liability even if it has the unintended effect of deterring a third party from dealing with the plaintiff." *Foseid v. State Bank of Cross Plains*, 197 Wis. 2d 772, 541 N.W.2d 203, 209 (Ct. App. 1995) (internal citations, quotation marks, and alterations omitted). And H&S must plead facts that demonstrate that the prospective contract was "sufficiently certain, concrete, and definite." *Quad/Graphics, Inc. v. One2One Commc'ns LLC*, No. 09-cv-99, 2012 WL 2370681, at *8 (E.D. Wis. June 21, 2012) (citing *Shank*, 192 F.3d at 689), *aff'd*, 529 F. App'x 784 (7th Cir. 2013).

6

Even assuming that Oxbo knew that H&S was attempting to sell its business, and even assuming that Oxbo somehow passed its knowledge to Kuhn, H&S has not alleged any facts that suggest that Oxbo and Kuhn knew about a *prospective contract*. H&S alleges that it put feelers out in late 2014 to determine whether anyone would be interested in purchasing the business. By early 2015, Oxbo knew that H&S was looking to sell. In May 2015, Oxbo filed suit. Construing the counterclaim allegations in the light most favorable to H&S, H&S has not alleged any facts that demonstrate—or even allow the court to infer—that H&S had lined up a third-party contract, much less one that was sufficiently certain, concrete, and definite. H&S refers to the "proposed sale of its business" and concedes that it was in the process of soliciting bids from "potential suitors." Dkt. 58, at 15-16. But a *proposed* sale to a *potential* buyer is a far cry from a certain, concrete, and definite contract. *Cf. Stucchi USA, Inc. v. Hyquip, Inc.*, No. 09-cv-732, 2010 WL 2990966, at *5 (E.D. Wis. July 28, 2010) (the defendant had plausibly alleged a prospective contract "by alleging that it had an oral agreement . . . with respect to [it] supplying the Product to [a third party]"). The closest that H&S comes to pleading the existence of a prospective contract is in paragraph 91 of the counterclaim, which alleges that Oxbo and Kuhn disrupted "the closing of the sale of H&S's business with a third-party purchaser." Dkt. 28, at 17. The most natural reading of this paragraph is that Oxbo and Kuhn interfered with H&S's efforts to sell its business to *any* third party; in the lead-up to paragraph 91, H&S discusses only its efforts to sell, not its efforts to sell to any particular party. Paragraph 91, by itself and in the larger context of the counterclaim, does not allege that H&S had engaged a *particular* third party to purchase its business, in sufficient certain, concrete, and definite terms. H&S's counterclaim does not plausibly identify a prospective contract, and, as a result, it has not stated a claim upon which

relief can be granted. *See Shank*, 192 F.3d at 689 ("[A] tortious interference claim cannot stand without a showing by the plaintiff that the defendant has interfered with some bargained-for right of his or, at a bare minimum, a 'sufficiently certain, concrete and definite prospective relationship' between the plaintiff and the third party."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

But in opposition to the motion to dismiss, H&S filed a declaration from its president, Chris Heikenen, which provides details about a potential sale of H&S. *See* Dkt. 59. Heikenen declares that in spring 2015, he signed a letter of intent between the company that owns H&S and "the third-party purchaser referenced in the asserted counterclaims." *Id.* ¶ 4. H&S has submitted the Heikenen declaration apparently to show that paragraph 91 refers to a *particular* third party, to whom H&S intended to sell its business.

Two points about the Heikenen declaration. First, the declaration is not part of H&S's counterclaim, and the court will not consider materials outside of the pleadings on a motion to dismiss for failure to state a claim. *See Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) ("Typically, motions to dismiss brought under Rule 12(b)(6) cannot include materials outside the pleadings." (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006))). The counterclaim as alleged in the pleading itself does not refer to the Heikenen declaration or otherwise incorporate its contents. The court will not consider it on a motion to dismiss.

Second, even if H&S had included the information in the Heikenen declaration in its counterclaim, H&S has not pleaded that Oxbo or Kuhn knew about that contract or intended to interfere with it. At most, H&S alleges that Oxbo and Kuhn knew that H&S was attempting to sell its business and that they agreed to jointly enforce their respective patent

8

rights against H&S. The infringement suit filed by Oxbo may have made it more difficult for H&S to find a buyer. But that is not enough to state a claim for tortious interference with a prospective contract. H&S has not alleged that Oxbo and Kuhn knew about and intended to interfere with the transaction proposed in the letter of intent signed by Heikenen.

Because H&S has failed to state a claim for tortious interference with prospective contract, H&S has also failed to state a claim for common law unfair competition. H&S concedes that its common law unfair competition claim is viable only if H&S has stated a claim for tortious interference with prospective contract. *See Thermal Design, Inc. v. Am. Soc'y of Heating Refrigerating & Air-Conditioning Eng'rs, Inc.*, No. 07-cv-765, 2008 WL 1902010, at *8 (E.D. Wis. Apr. 25, 2008) (stating that a common law unfair competition claim arises "when the acts or practices are otherwise actionable under another statute or the common law").

Because H&S has not stated a claim for either tortious interference with prospective contract or common law unfair competition, the court will grant Oxbo and Kuhn's motion to dismiss amended counterclaims IX and X.

**B. Motion for sanctions**

Kuhn seeks sanctions against H&S under Rule 11, for purportedly making false, unsupported allegations in its amended counterclaim. In paragraphs 79-81 of its amended counterclaim, H&S alleges that Kuhn did not inspect the accused products before it accused H&S of infringing its patent. Dkt. 28, at 15. Kuhn contends that H&S did not plead any facts to support the accusation; in fact, Kuhn argues that H&S knew that Kuhn *had* visually inspected the accused products because Kuhn served H&S with pictures of the accused products with its infringement contentions, before H&S filed and served its amended

9

counterclaim. In response, H&S contends that it had good reason to believe that Kuhn had not completed a pre-suit inspection: (1) Kuhn's pre-suit letters could not identify a structure in the accused products that qualifies as a "pivot frame" and seemed to ignore the "pivot frame" limitation; (2) Kuhn's answer in the related case stated that it did not have sufficient information to answer allegations concerning the nature and operation of the accused products; (3) Kuhn did not tell H&S that it *had* performed an inspection until after it filed its amended counterclaim; and (4) photographs do not necessarily mean that Kuhn performed an inspection, and Kuhn's infringement contentions simply repeat the claim language.

Rule 11(b)(3) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: the factual contentions have evidentiary support[.]" A party may move for sanctions for violations of Rule 11(b).[4] "The decision to impose sanctions is left to the discretion of the trial court in light of the available evidence." *Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). The court considers whether H&S, at the time it filed its amended counterclaim, had "taken a position reasonable in light of the facts and governing law[.]" *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 933 (7th Cir. 1989). "To win on a motion for sanctions, the movant must satisfy the high burden of showing that Rule 11 sanctions are warranted." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 860 (N.D. Ill. 2015) (citations and internal quotation marks omitted).

Kuhn has not carried its burden. Kuhn failed to demonstrate that H&S lacked reason to believe that Kuhn had not completed a pre-suit inspection at the time it filed and served

---

[4] Kuhn represents that it complied with Rule 11(c)(2). Dkt. 67, at 4.

its amended counterclaim. Kuhn relies exclusively on the fact that it gave H&S pictures that it had taken of the accused products. But these photographs, alone, did not establish that Kuhn had actually performed a pre-suit inspection, which requires element-by-element comparison of the accused product to the claims of the patent. H&S has shown that it had reason enough to believe that Kuhn had not conducted an adequate pre-suit investigation. The court will deny Kuhn's motion for sanctions.

## ORDER

IT IS ORDERED that:

1. Counterclaim defendants Oxbo International Corporation and Kuhn North America, Inc.'s joint motion to dismiss amended counterclaims IX and X, Dkt. 34, is GRANTED.

2. Counterclaim defendant Kuhn North America, Inc.'s Rule 11 motion for sanctions, Dkt. 67, is DENIED.

Entered August 19, 2016.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge