IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OXBO INTERNATIONAL CORPORATION,

                    Plaintiff,                          FINAL PRETRIAL
          v.                                        CONFERENCE ORDER

H&S MANUFACTURING COMPANY, INC.,                      15-cv-292-jdp

                    Defendant.

---

The court held a final pretrial conference on Wednesday, May 31, 2017, before
United States District Judge James D. Peterson. Plaintiff Oxbo International Corporation
appeared by counsel, Shane Brunner, Jeffrey Ward, Thomas Johnson, Stephen Howe, and
Emily Wessels. Defendant H&S Manufacturing Company, Inc., appeared by counsel, Eric
Chadwick, Aaron Davis, and Adam Szymanski.


GENERAL PRETRIAL INSTRUCTIONS

Counsel predicted that the case would take 5-10 days to try. The court will tell the
jury 10. The jury will consist of 8 jurors to be selected from a qualified panel of 14. Each side
will exercise three peremptory challenges against the panel. Trial days will begin at 9:00 a.m.
and will run until 5:30 p.m., with at least an hour for lunch, a short break in the morning,
and another in the afternoon. Counsel may be required to be in court earlier than 9:00 a.m.
to address matters without the presence of the jury. On the first day of trial, counsel are
directed to appear at 8:30 a.m.

Witnesses, with the exception of experts and corporate representatives, will be
sequestered.

The court directed counsel to meet and confer regarding their exhibit lists and deposition designations, to pare down objections. The court will rule on any meaningful objections that the parties are unable to resolve themselves. The court is not inclined to referee a large number of otherwise minor disputes.

The parties must submit electronic versions of their exhibits for the court not later than 8:30 a.m. on Monday, June 12, 2017. Unless otherwise agreed by the parties, counsel must disclose any exhibits to be used in opening statements not later than 6:00 p.m. on Friday, June 9, 2017, and identify the witnesses they anticipate calling not later than 6:00 p.m. on the business day before that witness is expected to testify.

Counsel should keep in mind that opening statements are an overview of the evidence. Arguments are to be reserved for the end of the trial.

Counsel indicated that they are familiar with the court's visual presentation system. Counsel should use the microphones at all times and address all objections to the bench, not to opposing counsel. If counsel need to consult with one another, they should ask for permission to do so. Only the lawyer questioning a particular witness may raise objections to questions put to the witness by the opposing party and argue the objection at any bench conference.

If counsel call the opposing party's witness as an adverse witness, counsel for the opposing party may choose whether to ask only clarifying questions of the witness and call the witness in its own case or do all its questioning during its opponent's case, in which case the party calling the witness will have an opportunity to respond with questioning. If counsel choose the first option, they are free to call the witness during their case. Counsel have the same two options as to any adverse witness; they are not bound by their decision on

questioning any previous witness. Counsel for the witness should inform the court which approach it will be taking before beginning the examination.

## VOIR DIRE AND JURY INSTRUCTIONS

The court and the parties discussed the draft voir dire and introductory instructions as distributed. Neither party objected to the circulated draft voir dire.

Oxbo asked the court to instruct the jury on the court's summary judgment holdings and its claim constructions during introductory instructions; H&S generally opposed. The parties briefed the issue after the conference. The court will inform the jury that certain issues have been decided by the court before trial, and it will provide the claim construction instruction. But the court will not instruct the jury on the specific summary judgment findings on infringement in the liability phase. The court concludes that such an instruction will unfairly stack the deck against H&S, and it is not needed to alleviate any juror confusion. (The issue of commercial success is discussed below.)

The court will consider whether to instruct the jury about the nature of the cross-license and the reasonable royalty calculation, although the court is not convinced that cross-examination on this issue will not be sufficient (as discussed below). Dkt. 468, at 5-7.

The court will consider the "harvesting in the winter" instruction only if H&S attempts to take advantage of the timing of those tests. *Id.* at 7-8.

The court will circulate a draft of the post-trial instructions and a draft of the special verdict forms in the coming days. Final decisions on the post-trial instructions and verdict forms will be made at the instruction conference near the end of the liability phase of trial.

RULINGS ON MOTIONS

**A. Oxbo's objections to H&S witnesses**

The court resolved Oxbo's objections to H&S's witness list: H&S does not intend to call either Mark Foley or Bob Snape. Witnesses available to testify for trial may not testify by deposition. The court's rulings on the motions in limine will govern the scope of permissible witness testimony.

**B. H&S's anticipation case against the '929 patent**

H&S concedes that under the court's claim constructions, it cannot show that the Beougher reference anticipates claim 44 of the '929 patent. Accordingly, summary judgment is granted to Oxbo on that issue.

**C. Oxbo's motion for sanctions**

As announced during the final pretrial conference, the court has determined that (1) H&S lost or destroyed potentially relevant design and development documents; (2) H&S's duty to preserve those documents arose not later than August 2010, when H&S claimed work product privilege and began preparing for litigation; and (3) the loss has prejudiced Oxbo. H&S's duty to preserve did not expire in August 2011, when Paul Dow and Chris Heikenen discussed the potential infringement issue, prompted by an Oxbo salesperson's comments. The court already determined that it would not have been reasonable for H&S to believe that Oxbo would not enforce its patent rights as a result of that conversation. Dkt. 392, at 12-16.

The evidentiary hearing on the motion for sanctions revealed that documents were lost as a result of a regular business practice: despite its policy of preserving all documents, H&S wiped computers when individuals left the company and transferred the computers to

new users. Thus, H&S destroyed key design and developments documents in 2012 and 2013. But, critically, Oxbo made no showing that the destruction was the result of any effort to hide adverse information from Oxbo. Thus, the remedy for H&S's spoliation is limited to putting Oxbo in the position in which it would have been, but for the spoliation.

The court will award Oxbo its reasonable fees and costs in bringing the motion. But crafting the other elements of an appropriate remedy for H&S's spoliation has proven difficult. Oxbo asks the court to: preclude H&S from offering testimony or other evidence regarding the design and development of the Tri-Flex; and preclude H&S from offering testimony or other evidence that it did not copy the patents-in-suit. This goes too far.

To allow Oxbo to argue and present evidence that H&S copied Oxbo's product while precluding H&S from responding would be tantamount to allowing the jury to draw an adverse inference from the spoliation. An adverse inference instruction—instructing the jury that it should or even may infer that the missing documents are not favorable to H&S—is a remedy appropriate only for bad faith spoliation. Oxbo has not argued, much less proven, that H&S acted in bad faith or to hide certain information from Oxbo. *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (holding that the district court properly denied the adverse inference when the record showed that Sears did not destroy the documents to destroy adverse information; Sears shredded the docs as a regular business practice). "Recent Seventh Circuit precedent on the proper standard for determining whether a party destroyed or failed to preserve evidence such that the other party is thus entitled to an adverse inference involves a requirement to show 'bad faith.'" *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 797 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015). To force H&S to sit silently as Oxbo accuses it of copying and willful infringement would allow or

even encourage the jury to assume that those accusations are unchallenged; it is a sanction equivalent to, if not worse than, an adverse inference instruction.

The court will instruct the jury as follows:

> Most of the documents related to the design and development of the Tri-Flex merger were lost or deleted from the computer system at H&S. Because those documents are now unavailable, you will hear no testimony about the contents of the missing design and development documents. During the trial, witnesses may mention that the documents are missing. But you should not make any assumptions about what is in the missing documents.

The parties may not introduce evidence or argue about the nature, content, or implications of those missing documents. Because there is no showing that the spoliation was in bad faith, the court will not allow the parties to go into the details about the loss of the documents. Doing so will waste time, risk jury confusion, and encourage the jury to draw an adverse inference about the contents of the missing documents.

Oxbo may use any surviving design and development documents to prove copying or willfulness at trial. If Oxbo does so, H&S may use the surviving documents in response. But H&S may not affirmatively use the design and development documents unless Oxbo opens the door.

Oxbo also asks that the court sanction H&S for its late document production in September 2016. But as the court explained during the final pretrial conference and at other points in this case, the court has already addressed the late production and remediated Oxbo's prejudice. The court expanded the summary judgment schedule and allowed Oxbo additional time and extra rounds of briefing, allowed Oxbo to supplement its expert reports, and allowed Oxbo to otherwise account for the late-produced documents as it deemed appropriate. The court made these changes to the summary judgment schedule in

consultation with the parties, and Oxbo gave the court every indication that it had fully addressed the late production situation. The court allowed Oxbo to use and rely on late-produced documents in its summary judgment submissions; the court will not turn around and prohibit H&S from using those documents at trial. But the court will award Oxbo its reasonable attorney fees and costs incurred in having to deal with the late production.

The court will have Oxbo submit a formal request for its fees for the sanctions motion after trial.

## D. Oxbo's commercial success

At the final pretrial conference, Oxbo asked the court to instruct the jury about the court's summary judgment decision. The reason Oxbo gave for wanting the instruction was that Oxbo intends to use H&S's sales of infringing Tri-Flex mergers as evidence of Oxbo's commercial success. There is nothing wrong, in principle, with using the infringing product to show commercial success. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention.").

But evidence of commercial success (or any other secondary consideration) is relevant only if there is a nexus between the claimed invention and the commercial success. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). If the success is due to unclaimed features, or to features that were in the prior art, commercial success is irrelevant. *Id*. If commercial success is due to superior marketing or distribution, it is likewise irrelevant. *See, e.g.*, *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1363 (Fed. Cir. 2012). Establishing this nexus is typically the province of an expert. But, according to H&S, Oxbo's first disclosure of any factual basis for commercial success was in its *damages* expert's

report. Dkt. 465 (citing Bero report, Dkt. 112). Oxbo's liability expert, Chaplin, did not disclose any expert opinion on commercial success or its nexus to the claimed invention. Oxbo's responses to H&S's contention interrogatories did not disclose any intent to assert commercial success as a secondary consideration in any specific terms.

Accordingly, Oxbo will not be allowed to assert commercial success as a secondary consideration unless it can demonstrate to the court that it had timely disclosed this theory to H&S. At this point, commercial success is out.

### E. H&S's motions in limine

#### 1. To sequester witnesses

The motion to sequester witnesses, except for party representatives and experts, is granted.

#### 2. To preclude Oxbo from using or referencing H&S's inadvertently produced privileged documents

The motion is granted, except that Oxbo may use the documents for impeachment purposes. The court will keep a copy of the documents on the bench and make them available to Oxbo should it need them.

#### 3. To preclude Oxbo from introducing evidence of pre-suit knowledge, willful infringement, or copying of the '739 patent, the '052 patent, and the '488 patent

The motion is denied. Oxbo is free to introduce the evidence that it has of H&S's pre-suit knowledge, provided Oxbo properly disclosed the evidence during discovery. The fact that the evidence may be weak is not a reason to take pre-suit knowledge, willful infringement, and copying off the table at this time. The court will instruct the jury on the applicable legal standards, and the jury will decide whether Oxbo's evidentiary showing is

sufficient. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury."). If H&S does not believe that Oxbo's evidentiary showing is sufficient to sustain a jury verdict on the issue, H&S may ask the court to direct a verdict in H&S's favor at the appropriate time.

To the extent the motion concerns H&S's lost design and development documents, it is subject to the court's ruling on that issue.

### 4. To preclude arguments regarding infringement under the doctrine of equivalents

Because the court granted H&S summary judgment of non-infringement under the doctrine of equivalents, Dkt. 392, the motion is granted.

### 5. To exclude any mention of inter partes review proceedings

The motion is granted for the most part, with one proviso: the court will instruct the jury as follows:

> The Patent Office considered the patentability of claim(s) ___ of the ___ patent with respect to [the _____ reference or the combination of the ___ and ___ references] during a supplemental proceeding called an inter partes review that was initiated by H&S. In that proceeding, the Patent Office determined [the ___ reference or the combination of the ____ and ____ references] did not affect the patentability of the claim(s).

H&S had an opportunity when it petitioned for IPR to introduce evidence against validity that was not, and could not have been, introduced during the original examination. Thus, it would be unfairly prejudicial to Oxbo to allow H&S to argue to the jury that the references that it presented in the IPR petition had never been evaluated by the Patent Office. All other references to the IPR proceedings are out.

Counsel should provide the court with the information necessary to fill-in the blanks in the special instruction.

### 6. To limit testimony and argument from Oxbo witnesses and counsel regarding alleged copying as to the '929 patent

The motion is denied for the most part. Oxbo disclosed that its expert would offer opinions on nonobviousness and secondary considerations, and Chapin did so. Oxbo identified Paul Dow and Jim Glazier as individuals with knowledge of secondary considerations. Dkt. 357-3, at 6. And Oxbo identified Steve Pesik in its Rule 26(a) disclosures as having information regarding the "competitive landscape in the windrow merging apparatus market" and "general industry knowledge." Dkt. 357-5, at 4. Copying, Oxbo contends, falls within these categories. And Pesik testified to the company's position on that issue. Dkt. 304 (Pesik Dep. 55:23-25, 57:24-58:10). Those properly disclosed witnesses may testify accordingly. H&S did not serve a contention interrogatory specifically targeting copying, so the fact that Oxbo's interrogatory responses were aimed at secondary considerations generally does not pose a disclosure problem.

### 7. To prohibit product-to-product comparison as part of infringement analysis

The motion is granted as unopposed. Oxbo may not use product-to-product comparison to prove infringement.

### 8. To preclude evidence of H&S's financial size and overall revenue

The motion is granted and applies equally to Oxbo's financial size and overall revenue. As discussed during the final pretrial conference, Oxbo may attempt to show Heikenen's bias by asking him about his ownership stake in H&S. But Oxbo may elicit testimony regarding only the fraction or percentage of Heikenen's stake, not its dollar value.

If the parties believe that this information may be relevant during the damages phase, they should raise the issue with the court then.

### 9. To exclude evidence of pretrial sanctions, discovery motions, orders, and evidence

The motion is granted. The evidence is no doubt highly prejudicial to the losing party, and Oxbo has not demonstrated that any of the court's prior rulings are relevant, much less that they are more probative than prejudicial. To the extent the motion concerns H&S's destroyed design and development documents, it is subject to the court's ruling on that issue.

## F. Oxbo's motions in limine

### 1. To exclude evidence regarding H&S's patents

The court had a lengthy discussion with the parties about this motion at the final pretrial conference. In short, the court was not persuaded that H&S's issued patents bear any relevance to the issues to be tried. The issued patents are excluded.

H&S made a slightly better case for mentions of potentially patentable features as it sought and obtained advice of counsel during the Tri-Flex's development. No advice of counsel documents, opinion letters, or other relevant documents speak directly about H&S's issued patents, but they may contain comments about the potential patentability of features of H&S's products. But this information, too, is irrelevant. (The patentability of H&S's products might be relevant to a defense to infringement under the doctrine of equivalents, but that's not in the case.) H&S is free to offer evidence of its attempts to design around the Oxbo patents; it does not need its patents to tell its development story or rebut copying accusations. To allow H&S to introduce its own patents or the patentability of its products would undoubtedly confuse the jury. The motion is granted.

If the advice of counsel documents include more than minor comments about patentability, the advice of counsel documents can be redacted. The court assumes that the parties will work this out, but they should bring the matter to the court's attention if necessary.

## 2. To exclude Kuhn references

The motion is granted. Shirley is limited to the opinions disclosed in his report, and he does not offer any analysis of or opinions involving the Kuhn references. Shirley may testify that the Kuhn references are among the documents he considered, but the references are otherwise excluded.

## 3. To exclude evidence regarding the cross-license and related evidence and expert opinions

The motion is denied. The cross-license is of questionable relevance. On one hand, Oxbo and Kuhn entered into the cross-license under threat of litigation, and thus it is not a great measure of the market value of the patents-in-suit. "The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012). "The notion that license fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary agreement will be reached between a willing licensor and a willing licensee, with validity and infringement of the patent not being disputed." *Id.* On the other hand, Oxbo has not otherwise licensed the patents-in-suit, so the cross-license is the only license available to the damages experts. The Federal Circuit has allowed reliance on settlement agreements under such circumstances. *Id.* (citing *ResQNet.com, Inc. v. Lansa, Inc.*,

594 F.3d 860, 870-72 (Fed. Cir. 2010) (explaining that a settlement license to the patents-in-suit in a running royalty form was "the most reliable license in [the] record" when compared with other licenses that did not "even mention[ ] the patents-in-suit or show[ ] any other discernable link to the claimed technology")). When it comes down to it, the cross-license is of arguable probative value, and Cordray adequately explains how and why he relies on it. *See* Dkt. 318, ¶¶ 77-101. The countervailing reasons for disregarding it are properly explored on cross-examination.

And Oxbo's Rule 408 arguments are not persuasive. No one intends to use the cross-license and the related settlement negotiations to prove liability.

### 4. To preclude evidence regarding H&S's equitable defenses

The motion is granted. The court resolved H&S's equitable defenses on summary judgment. The court will address the relevance of the "equitable defenses" facts to the parties' remaining claims when it addresses H&S's motion to submit to the jury common factual issues. Dkt. 380.

### 5. To exclude testimony and argument about prior art combinations not addressed in H&S's expert's report

The motion is granted as unopposed.

### 6. To preclude H&S and its expert from providing evidence of institution of inter partes review

The motion is granted as unopposed and consistent with the court's ruling on H&S's motion in limine no. 5.

7. **To preclude H&S's expert from testifying to his conclusion that the asserted claims are anticipated or obvious**

The motion is denied. According to Oxbo, Shirley applied a "lower standard" of proof when he formed his obviousness and anticipation opinions (in connection with the IPR), and, as a result, his ultimate conclusions are so unsound they should be excluded. The fact that Shirley may have bungled a few questions about the legal standard applicable to validity challenges does not show that he fundamentally misunderstands the law, or that his opinions are fundamentally unreliable. Oxbo is free to explore Shirley's understanding of the standard of proof issue during cross-examination.

8. **To preclude H&S from introducing evidence regarding Oxbo's terminal disclaimers**

The motion is denied as unnecessary. The parties agree that a terminal disclaimer is not an admission as to whether any patent claim is patentably distinct from the claims in the parent. If Shirley opines otherwise, the court will provide a curative instruction. It does not appear that Shirley's opinions regarding the '739 patent and the '488 patent are predicated on an incorrect understanding of how terminal disclaimers work, so the court will not exclude those opinions. Oxbo is free to explore the issue on cross-examination.

9. **To preclude H&S from introducing the Krone declaration or presenting a Krone witness at trial**

As discovery came to a close, H&S produced a declaration by Jody McRee of Krone NA, Inc. Krone manufactures farm equipment. The declaration authenticates three Krone documents as business records. H&S proposes to have an H&S sales manager, John Seitz, testify about Krone and other brand rotary rakes and their use as an alternative to triple mergers, presumably using the Krone document to illustrate his testimony. H&S contends

that Seitz's testimony will be relevant to the jury's consideration of non-infringing alternatives during the damages phase.

The court will allow Seitz to testify as a lay witness, to the extent he has relevant knowledge of hay rakes (including those made by Krone). But his testimony about non-infringing alternatives will come close to expert opinion, which he cannot offer because he has not been disclosed as an expert. H&S has not shown why or how the Krone documents would be admissible other than as support for an expert opinion about non-infringing alternatives. The motion is granted: the Krone documents are excluded.

## 10. To exclude certain references from being used as prior art against Oxbo's originally asserted claims

Oxbo asks the court to preclude H&S from arguing that claim 44 of the '929 patent, claim 1 of the '739 patent, claims 1 and 3-11 of the '488 patent, and claims 1, 4, 6, and 8 of the '052 patent are invalid based on CA Honey, van der Lely, Declementi, Lohrentz, US Honey, Pourchet, or any other undisclosed references, and from arguing that claim 1 of the '739 patent is invalid over the combination of Dow '757 in view of Zhavoronkin. The motion is based on an agreement the parties reached during discovery.

H&S agrees to the foregoing, with one exception. It contends that it properly disclosed its contention that claim 1 of the '739 patent is invalid over Dow '757 in view of Zhavoronkin, and, as a result, that combination is fair game at trial.

In June 2016, H&S agreed that it would not assert any references that it did not disclose in its January 8 and March 24, 2016 invalidity contentions against Oxbo's originally asserted claims. *See* Dkt. 376-33 ("H&S has agreed that the only references it may use against the originally asserted claims is that which was disclosed in its original and

supplemental invalidity contentions, served January 8, 2016 and March 24, 2016 respectively. To the extent H&S's expert reports cite additional references, H&S has agreed it will not use such references against the originally asserted claims in this litigation."). The issue here is whether H&S disclosed the Dow/Zhavoronkin combination in either its January 8 or March 24 contentions.

Both disclosures identify the Zhavoronkin reference and the Dow reference. *See* Dkt. 376-26, at 13-15 and Dkt. 376-22, at 11. The January disclosure contends that claim 1 of the '739 patent is invalid over "one or more of the following patents individually or in combination," and it includes the Zhavoronkin reference and the Dow reference in the list that follows. Dkt. 376-26, at 18. The March disclosure identifies specific prior art combinations—contending that claim 1 of the '739 patent is invalid over Schnittjer in view of Zhavoronkin, for example—but it never contends that claim 1 of the '739 patent is invalid over Dow in view of Zhavoronkin. Dkt. 376-22, at 13-14.

H&S's disclosure was not specific enough to put Oxbo on notice of the particular invalidity ground that H&S was asserting. Accordingly, the motion is granted in full.

### 11. To exclude reference to John Orr and Orrson Custom Farming

The motion is granted as unopposed.

### 12. To exclude evidence regarding an alleged hypothetical acceptable non-infringing alternative

This motion identifies two problems for H&S. First, H&S did not identify its WMCH30 merger as an acceptable non-infringing alternative in response to an Oxbo contention interrogatory. H&S disclosed "H&S Twin Mergers of all sorts" and "H&S Front Mount Mergers." Dkt. 376-1, at 9. Cordray refers to the WMCH30 as a twin merger. But

according to Oxbo, the WMCH30 is neither a twin merger nor a front mount merger: it is a continuous face merger. Neither party has adduced evidence that would allow the court to determine whether "H&S Twin Mergers of all sorts" or "H&S Front Mount Mergers" includes the WMCH30. So it cannot say whether H&S properly disclosed the WMCH30 as an acceptable non-infringing alternative.

But even if H&S's disclosures were adequate, Cordray's opinions about the WMCH30 are not well grounded. Cordray opines "that if H&S was precluded from commercializing its current Tri-Flex triple mergers, it could have continued selling—and would have improved the design of—an existing twin merger [the WMCH30]." Dkt. 318, ¶ 32. Cordray acknowledges the product's shortcomings, but he opines that sales figures undermine Bero's opinion that the WMCH30 was not commercially successful. Cordray goes on to opine that "if H&S could not sell its Tri-Flex triple mergers in 2011, it could have and would have invested its resources into engineering a better WMCH30." *Id.* ¶ 33.

Cordray never opines that the *existing* WMCH30 is an acceptable non-infringing alternative; he opines that a new-and-improved WMCH30 would qualify as an acceptable non-infringing alternative. But he does not have the data to back it up. "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). So H&S bears the burden of rebutting this inference by demonstrating that a non-infringing substitute *was* available during the period of infringement. "[T]he trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement. Acceptable substitutes that the infringer proves were available during the

17

accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Id.* H&S must prove the availability of a new-and-improved WMCH30 with concrete evidence, not speculation. H&S should be able to show that it "had all of the necessary equipment, know-how, and experience" to improve the WMCH30. *Id.* at 1354. But Cordray was armed with none of this information. He worked off of Heikenen's conclusory say so. Cordray's opinion regarding an improved WMCH30 is conclusory and unreliable, and the court will exclude it.

### 13. To exclude reference to prior *Daubert* challenges or exclusions

The motion is granted as unopposed.

### 14. To exclude evidence and argument regarding Oxbo's motivations for bringing this lawsuit and any resulting harm to H&S

H&S agrees that, "apart from its equitable defenses," this evidence is properly excluded. But the equitable defenses are not an issue for the jury, so the motion is granted in full.

### 15. To preclude H&S from asserting that Oxbo is attempting to monopolize the merger market

The motion is granted as unopposed.

### 16. To preclude H&S's expert from introducing opinions based on the non-existent Shirley report

The motion is granted. H&S agrees that Cordray may not offer any opinions that rely on the undisclosed December 2016 Shirley report.

### G.  H&S's remaining motions

#### 1.  To exclude expert testimony regarding secondary considerations of nonobviousness

H&S moves to exclude Chaplin's opinions regarding licensing, copying, and industry praise, under *Daubert*. H&S contends that the opinions are not reliable; he does not employ any principles, methods, or specialized knowledge. Dkt. 114, ¶¶ 718-38. The opinions are inadmissible *ipse dixit*.

The court agrees with H&S, in part. Chaplin's licensing opinion cites the Kuhn cross-license and then concludes that the "license is evidence that the [patents-in-suit] are nonobvious because Kuhn recognized the value and validity of the patents." *Id.* ¶ 721. The opinion is conclusory, and the court will exclude it.

As for copying, H&S overlooks Chaplin's supplemental report, Dkt. 208, which provides his most detailed copying opinions. Chaplin opines that documents and photographs reveal that H&S thoroughly analyzed Oxbo's triple head mergers. *Id.* ¶¶ 32-35. Chaplin opines that "H&S's efforts to study these details of the Oxbo mergers while H&S was developing the Tri-flex suggest that H&S copied patented and functional features of the Oxbo mergers . . . ." *Id.* ¶ 36. Chaplin points to documents that indicate that H&S inspected an Oxbo merger and took detailed notes about it around the time that it began developing the Tri-Flex. H&S's motion does not acknowledge these opinions. The opinions, although they amount to fairly weak evidence of copying, are not so unreliable that the court will exclude them.

Finally, as discussed at the final pretrial conference, the court will admit only certain aspects of Chaplin's industry praise opinions: those opinions based on the 2004

"Outstanding Innovations Award." Dkt. 114, ¶ 727. The other publications and awards that Chaplin cites either do not qualify as praise or do not have a sufficient nexus to the patented features.

## 2. To exclude expert testimony regarding damages

H&S contends that Bero's and Chaplin's damages opinions are neither relevant nor reliable, for three reasons.

First, H&S contends that Bero relies on Chaplin's unsupported say so to support his opinion that there are no acceptable non-infringing alternatives, which is a necessary step in his opinion that Oxbo is entitled to lost profits. Chaplin opines that hay rakes are very different than mergers and that they are not acceptable non-infringing alternatives because (1) hay rakes flick soil and stone into windrows, which causes higher ash content and lower-quality forage; (2) hay rakes operate at about half the operational speed of mergers; and (3) hay rakes have limited flexibility and functionality compared to mergers (cannot operate in either direction or merge with fewer than all pickup heads). Dkt. 315, at 3-4. Chaplin's opinion about hay rakes is not *ipse dixit*. The fact that H&S may adduce evidence that hay rakes are "equal or superior to mergers in seven of nine categories" and that H&S's expert disagrees with Chaplin on the hay rakes issue goes to weight, not admissibility. Bero's non-infringing alternatives opinion is adequately supported.

Second, H&S contends that Bero fails to apportion his trough and rub rail royalty to account for unpatented features. The trough patent does not cover all the features of the Tri-Flex, so Oxbo cannot claim the entire market value of the Tre-Flex as damages. Bero concedes as much. But H&S contends that he does not explain how he apportioned the damages to the patented features. Oxbo responds that H&S misunderstands Bero's report. Bero identifies

profits attributable to two (trough, rub rail) of the twelve improvements to Oxbo's new generation of mergers. "[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'" *LaserDynamics, Inc.*, 694 F.3d at 67 (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 283, 287-88 (N.D.N.Y. 2009), *as amended*, No. 01-cv-1974, 2009 WL 1405208 (N.D.N.Y. May 15, 2009)). Bero does not disregard this principle and he has a method to apportion the trough and rub rail royalty. Dkt. 320, at 63-67. The court will not exclude the opinion.

Finally, H&S contends that Bero's triple head royalty analysis is fatally flawed for several reasons. First, H&S contends that he starts with a baseless lost profits opinion. This notion is rejected for reasons discussed above.

Second, H&S contends that Bero makes an arbitrary and unexplained downward departure from 75 percent to 60 percent to adjust to Oxbo's market share. Bero states that Oxbo's market share may be as low as 60 percent. The number is the conservative choice; it is not arbitrary. *See* Dkt. 320, at 30 (Heikenen estimated Oxbo's market share to be between 60 and 70 percent); 32 (Oxbo's market share estimated to be about 60 percent in 2013 and 2014); 40 ("Oxbo's patented triple mergers accounted for approximately 66% of the market in 2011, and have accounted for approximately 60% of the market since 2012.").

Third, H&S contends that Bero's per-unit royalty is legally erroneous, citing another district court's criticism of a Bero opinion using a per-unit royalty. *See Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1001 (N.D. Ill. 2014). But a per-unit reasonable royalty is not per se unreasonable. *See, e.g., Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1304 (Fed. Cir.) ("This court has noted the common (not universal) economic justifications for using per-unit royalties for measuring the value of use of a technology: doing

so ties compensation paid to revealed marketplace success, minimizing under- and over-payment risks from lump-sum payments agreed to in advance."), *reh'g en banc denied in part*, 805 F.3d 1382 (Fed. Cir. 2015).

Fourth, according to H&S, Bero improperly conflates the three triple head patents, by performing only one reasonable royalty analysis, even though the hypothetical negotiations would have occurred at different times. Bero correctly identifies the starting point for each hypothetical negotiation. Dkt. 320, at 49 n.260, 61 n.309.

The bottom line is that H&S has not identified any persuasive reason to exclude any aspect of Bero's report. The motion is denied in its entirety.

### 3. Motion for judicial notice

The motion is denied as moot.

### 4. H&S's motion to submit to the jury the facts related to H&S's equitable defenses

The motion is denied. H&S contends that its equitable estoppel facts (the August 2011 phone call between Dow and Heikenen, discussed in the court's summary judgment opinion) should go to the jury because they are relevant to both willfulness and H&S's equitable defenses. Oxbo opposes the motion because the facts are not relevant to willfulness.

The court has already determined that it was not reasonable for H&S to believe that Oxbo would not enforce its patent rights after the phone call. As discussed at the final pretrial conference, H&S has not convinced the court that the phone call is relevant to willfulness, but presenting it to the jury would risk substantial confusion and waste time. The motion is denied.

ORDER

IT IS ORDERED that:

1. Plaintiff Oxbo International Corporation's motion for sanctions, Dkt. 260, is GRANTED in part and DENIED in part.

2. Defendant H&S Manufacturing Company, Inc.'s motion in limine no. 1, Dkt. 346, is GRANTED.

3. Defendant's motion in limine no. 2, Dkt. 347, is GRANTED.

4. Defendant's motion in limine no. 3, Dkt. 348, is DENIED.

5. Defendant's motion in limine no. 4, Dkt. 349, is GRANTED.

6. Defendant's motion in limine no. 5, Dkt. 350, is GRANTED, subject to the terms discussed herein.

7. Defendant's motion in limine no. 6, Dkt. 352, is DENIED, as discussed above.

8. Defendant's motion in limine no. 7, Dkt. 353, is GRANTED.

9. Defendant's motion in limine no. 8, Dkt. 354, is GRANTED

10. Defendant's motion in limine no. 9, Dkt. 355, is GRANTED.

11. Plaintiff's motions in limine, Dkt. 359, are GRANTED and DENIED as set forth herein.

12. Defendant's motion to exclude expert testimony regarding secondary considerations of nonobviousness, Dkt. 334, is GRANTED in part and DENIED in part.

13. Defendant's motion to exclude expert testimony regarding damages, Dkt. 336, is DENIED.

14. Defendant's motion for judicial notice, Dkt. 343, is DENIED as moot.

15. Defendant's motion to submit to jury, Dkt. 380, is DENIED.

Entered June 7, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge